UNITED STATES of America, Plaintiff-Appellee,

v.

Jeremiah Hope PULLINGS, alias Jerry Evans, Delores Keeby, alias Dee Dee, and Alice M. Gilmore, alias Mona Evans, Defendants-Appellants.

Nos. 13413, 13532.

United States Court of Appeals Seventh Circuit.

July 19, 1963.

Rehearing Denied Aug. 27, 1963.

William C. Starke, George N. Leighton, Chicago, Ill., Howard T. Savage, Chicago, Ill., of counsel, for defendants-appellants.

James P. O'Brien, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for plaintiff-appellee.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

These two appeals were both taken from judgments and convictions resulting from a single trial of four indictments.

## No. 13532

Defendant-appellant Alice M. Gilmore was one of thirteen defendants charged with violation of the federal narcotics control laws. The indictment in District Court Case No. 59 CR 466 charged her and twelve others with conspiracy to violate the federal narcotic laws over a period of time from about August 1, 1954, continuously to and including the date of indictment, September 2, 1959. The indictment in District Court Case No. 59 CR 468 charged Alice M. Gilmore, Jeremiah Hope Pullings and Florine Whitlow Johnson with unlawful sale of narcotics on or about January 11, 1958, to Victoria Marie Basemore and James S. Bailey. These two indictments were consolidated for trial with two other indictments in District Court Cases 59 CR 467 and 470, which charged Miles J. Cooperman, Sheldon R. Teller, and Delores Keeby, respectively with two other narcotics violations. These three defendants were also named in the general conspiracy indictment in No. 59 CR 466.

The trial resulted in a verdict of guilty and Alice M. Gilmore was sentenced to serve ten years imprisonment.

As appellant states:

"The errors urged on this appeal arise out of the consolidation of indictments for a joint trial, prejudicial errors in the admission of evidence to the jury, prejudicial errors in overruling appellant's motions for acquittal and entering judgments against appellant without proof beyond a reasonable doubt that appellant was guilty as charged; and prejudicial errors in setting aside an order of the trial court which granted appellant a new trial because of prejudicial conduct of government officers after return of the verdict of the jury, but before the trial court had ruled on appellant's post-trial motions."

It is appellant's position that the proof on the trial established mere episodes unrelated to the conspiracy charged; that the continuing conspiracy charged in the indictment was never proved; that there was a lack of substantial evidence to prove that appellant had knowingly been part of such conspiracy and had committed the crimes charged. Appellant contends that she was prejudiced by joinder of indictments charging her with a sale of narcotics and with being a party to a conspiracy, and the indictments charging others with substantive offenses which were not alleged in the conspiracy indictment as committed in pursuance of the conspiracy charged. Thus appellant argues that the jury heard evidence concerning unconnected charges against her and others which were unrelated to the conspiracy.

It is the government's position that, the evidence viewed in the light most favorable to the government, as this Court must view it on this appeal, shows a single, unified conspiracy to deal in narcotics and that there was no prejudicial variation between the charges in the indictment and the proof. The government asserts that the substantive indictments were properly consolidated for trial with the general conspiracy indictment because two of those substantive indictments involved acts listed among the Overt Acts which furthered the conspiracy, and the third charged a co-conspirator with concealment of heroin during the period charged in the conspiracy indictment. The government argues that no testimony was admitted at the consolidated trial which would not have been admissible on trial of the general conspiracy charge.

Appellant characterizes as prejudicial error admission of testimony concerning a conversation between a government witness and one of the defendants which

was recorded by federal agents through electronic equipment in violation (appellant asserts) of Illinois law and in deprivation of the appellant's Constitutional privilege of due process. The government's view is that the evidence of conversations overheard through electronic devices was not inadmissible under the provisions of Federal Rules of Criminal Procedure No. 26 [1] which makes federal courts sitting in Illinois the sole judges of admissibility of evidence in federal criminal trials regardless of the rules of evidence followed in the criminal courts of the State of Illinois.

It is further contended that appellant was prejudiced by destruction prior to trial of government exhibits 20 and 21, both allegedly comprising narcotics obtained by government witnesses. The government's view is that this evidence was inadvertently destroyed and that proper foundation was laid for introduction of secondary evidence of its chemical composition.

Appellant further asserts that she was deprived of a fair and impartial hearing of her motions for acquittal and new trial by the conduct of certain government officials, including two assistant United States attorneys. Three Chicago police officers had been named in the general conspiracy indictment (59 CR 466) as having advised and protected the other defendants and co-conspirators in return for certain sums of money. They were charged with specific overt acts, and, in a separate indictment (59 CR 467) two of them were charged with an unlawful sale of narcotics.

At the close of all the evidence, these three police officers moved for judgment of acquittal. The Trial Judge granted these motions after the jury had begun its deliberations and after the jury had actually brought in sealed verdicts [which proved to be guilty verdicts against some of the defendants (not including the three police officers)] in cases numbered 59 CR 466 and 468.

In response to the Trial Court's inquiry, the jury had indicated that additional time would be required to arrive at a verdict respecting the four defendants not covered by the sealed verdicts. At this time, the Trial Judge indicated that he had reluctantly allowed the jury to consider the case of the three police officers. He reviewed the evidence against them at length, indicated his view that it would not support a verdict of guilty, and then granted the motions to acquit the three police officer defendants.

The jury then returned to its deliberations and brought in a verdict of not guilty as to the remaining defendant, William L. Jones, in case No. 59 CR 466.

The government officials, mentioned above, visited some, if not all, of the jurors in their homes, to ascertain their views of the Trial Court's action respecting the three police officers. Subsequently, articles appeared in the newspapers indicating critical views held by various jurors, particularly the foreman, respecting the Court's ruling. Appellant asserts that this incident, and the presence of some of the same jurors in the courtroom at the time that the Trial Judge ruled on the motions for acquittal or new trial for certain of her co-defendants, prejudiced the Trial Court's ruling on those motions and on her own motions for acquittal and new trial which were heard at a later time.

Prior to ruling on this appellant's own motions for acquittal and new trial, the Trial Judge's attention had been invited to the incident of the visits to the jurors

---

1. "Rule 26. Evidence

"In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by an act of Congress or by these rules. The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

by motions filed on behalf of appellant's co-defendants Jeremiah Hope Pullings and Delores Keeby. At the hearing on those motions, the Trial Judge indicated that he saw in these visits to the jurors, and the subsequent events, an attempt by the government to influence him. He stated that the defendants had a fair trial; that there was overwhelming evidence of the guilt of Jeremiah Pullings, Delores Keeby and this appellant; of a general conspiracy in which appellant and three others were key personnel; [2] but that he would grant a new trial for all parties because of these post trial incidents involving the jurors. This order was entered May 4, 1961.

The government moved to vacate this order on the ground that two of the defendants to whom the order of May 4, 1961, granted a new trial (Jeremiah H. Pullings and Delores Keeby) had already filed their notice of appeal. The Trial Judge then vacated the order not only as to those two defendants but also as to appellant. Later appellant's own motion for acquittal and new trial and her motion to set aside the order vacating grant of a new trial were denied. The government contends that appellant had a full and complete hearing at that time.

Appellant contends that gaps in the proof necessarily result from the following circumstances: Simon H. Stallsworth was dead at the time of trial and the proof was silent as to his part in the conspiracy; Sheldon R. Teller, Miles J. Cooperman, and Richard E. Austin, the three policemen, were acquitted on directed verdicts; Gladys Davis and James White were granted new trials; William L. Jones was found not guilty; Morris Wheeler Roller and Armando Piemonte were dismissed. All of these were included in the general conspiracy indict-

ment case No. 59 CR 466. Thus appellant reasons that the conspiracy charged, involving thirteen defendants and including as an integral part the corruption of three police officers, was not proved and that any other conspiracy proved must have constituted a fatal variance.

Appellant comments that:

"In Aviles, Stromberg and Poliafico [3] the government was fortunate to have admitted conspirators describe under oath their respective roles in the conspiracy, testify unequivocally concerning their parts in the crimes charged and describe with detail the agreement and combine of their co-conspirators. These fortuitous circumstances are not present in the case at bar.

"Granted that the proof in those cases may have presented far fewer problems for the prosecution, nevertheless the evidence in the case before us is not limited, as appellant contends to isolated episodes. The various incidents when viewed in the light of the entire record are seen to be parts of a mosaic disclosing the distinct pattern of a conspiracy to deal in narcotics contrary to federal law. We need not summarize the testimony in detail. A few illustrative examples will suffice."

At his request, James White was introduced to Jeremiah H. Pullings [4] in the fall of 1955, by Winston Mardis who is named in the indictment as a co-conspirator. Lydia Shorten, also listed in the indictment as a co-conspirator, testified that in January 1956 she met James White at his home; that Gladys Davis and another indicted co-conspirator, Jesse Maroy, were present. Lydia Shorten stated that when Delores Keeby arrived, Delores Keeby gave a package of heroin

---

2. The Trial Judge had previously granted a new trial for two of the defendants indicted in case No. 59 CR 466: James A. White and Gladys Davis.

3. United States v. Aviles, 2 Cir., 1960, 274 F.2d 179; United States v. Stromberg, 2 Cir., 1959, 268 F.2d 256; Poliafico v. United States, 6 Cir., 1956, 237 F.2d 97.

4. In the testimony some of the defendants are called by various aliases. There is also a variance in the record in the spelling of the names of some defendants. In this opinion, for convenience, we shall use the same names and spellings throughout.

to James White who gave some of it to Jesse Maroy, who in turn, gave it to Lydia Shorten with instructions to take it to their room on Sacramento Boulevard. She testified that she did so. She testified further respecting another meeting at James White's home and another delivery of a package of heroin which she took to an apartment on Wood Street. She testified to weekly meetings with Delores Keeby at which the latter delivered heroin to her. She stated that she would often arrange these meetings and deliveries by telephoning and leaving a message at a telephone number given her by Delores Keeby; that Delores Keeby, Jeremiah H. Pullings, or Morris Wheeler Roller would then call her. She said that sometimes she telephoned Winston Mardis and that Delores Keeby or Morris Roller would then deliver the heroin. She testified further to paying Winston Mardis about $1,000 weekly for heroin.

In March 1956 she said that she and Jesse Maroy had visited Winston Mardis' home where she had a conversation with Delores Keeby and Winston Mardis. Winston Mardis testified that Jesse Maroy had a conversation at that time with Jeremiah Pullings who was there when Lydia Shorten and Jesse Maroy arrived. Lydia Shorten testified that Jesse Maroy told her he would discuss with Jeremiah Pullings his dissatisfaction with the quality and quantity of the narcotics delivered and that, after the conversation, he said he was still dissatisfied. Lydia Shorten also testified to a later meeting in a restaurant with Jesse Maroy, Jeremiah Pullings and Winston Mardis, where Jesse Maroy complained of the narcotics and Jeremiah Pullings promised him improvement in quality and make-up of shortages.

Victoria Marie Basemore testified to meeting Jeremiah Pullings in Detroit in May 1956, where she was employed by him to accept packages to be later delivered on his behalf to a Detroit customer. She testified further that she later had a telephone conversation with him in which he told her a package would be delivered. Victoria Basemore stated that she knew Jeremiah Pullings as Jerry Evans, but at the trial she referred to him mainly as "Pullings." Jeremiah Pullings testified that he used the name James V. Evans when he applied for a position operating a Standard Oil service station. A few hours after the telephone conversation, Victoria Basemore was visited by Delores Keeby who brought ten packets of heroin. Victoria Basemore stated that she delivered five of these to the aforementioned Detroit customer the following day, and the remainder about two weeks later. She testified to regular periodic deliveries in a similar manner by Delores Keeby, and to seeing Jeremiah Pullings during that time in Chicago and in Detroit. She said she paid Pullings in Chicago the money she received from the customer in Detroit. She discontinued the sales to that customer and also began sales to another customer on Jeremiah Pullings' orders.

The Illinois Bell Telephone records show the subscriber to Commodore 4–4891 in Chicago was James V. Evans, and that there were a number of toll calls to "Vicky" at University 3–3919, Detroit, Michigan.

Lydia Shorten testified to other deliveries, in the fall of 1956 and the winter of 1957, by Delores Keeby and Morris Roller. Some of her meetings were arranged by telephoning Hudson 8–4348, and leaving a message with an answering service. Delores Keeby would return her call and make arrangements for delivery. Hudson 8–4348 was the number of Artistic Builders Co., a corporation formed by Morris Roller, Winston Mardis and Jeremiah Pullings.

Victoria Basemore testified to knowing Alice Gilmore, whom she identified at the trial, under the name of "Mona Evans." She said she met Alice Gilmore in Detroit in September 1957 with Jeremiah Pullings and again in December 1957. She testified further that she telephoned Jeremiah Pullings at the Towne Motel in Detroit, that Alice Gilmore an-

swered, and said that if it was business she could take care of it. Victoria Basemore then told Alice Gilmore she needed heroin. The following day, she visited Alice Gilmore at the Towne Motel. Alice Gilmore gave her a key to the adjoining room in which Victoria Basemore found heroin. She then returned to Alice Gilmore's room and gave her $1,000 she had received from a customer named "Tommie Simmons," who was in fact federal narcotics Agent James Bailey. When Victoria Basemore later saw Jeremiah Pullings in Chicago she asked him whether he received the money paid that day to Alice Gilmore in Detroit and he said that it had already been taken care of.

Victoria Basemore also testified to calling Alice Gilmore from Detroit in January 1958 and to a visit with her in Chicago. Agent Bailey came with Victoria Basemore. He supplied the money with which she paid Alice Gilmore for prior deliveries of narcotics. They spent some days in Chicago. Following instructions from Jeremiah Pullings, Victoria Basemore and Agent Bailey met Florine Johnson who delivered narcotics to them. Alice Gilmore asked them to collect a sum of money for her from someone in Florida. Agent Bailey testified that Alice Gilmore said the customer refused to pay; that he said the last shipment was not good. She also asked for a check to be made on a customer in Detroit named "Loretta." There was other evidence concerning dealings with a Loretta Sasser. At Alice Gilmore's direction, Florine Johnson left to telephone the Florida customer, and then returned saying she had called him in Miami. The Telephone Company records showed a call on February 3, 1958, from Commodore 4–9056 Chicago to Franklin 4–9261, Miami, Florida, Apt. 10 to "James." While staying at the Mayflower Hotel, in Chicago, in the fall of 1957 and the early winter of 1958, as Mona L. Evans, Alice Gilmore received two incoming collect calls from Miami, one from Franklin 1–8164, an unlisted number for a telephone located in Apartment 10, 425 N. W. 13th Street, Miami,

Florida, the residence of James Jackson. She also made two long distance calls to University 3–3919, Detroit, Michigan, one designated as "P. to Vickie."

On instructions from Alice Gilmore, Agent Bailey testified, he went to 425 N. W. 13th Street, Miami, Florida, Apartment 10, where he spoke to James Jackson, who is listed as a co-conspirator in the indictment. He stated that James Jackson told him that Jerry and Mona were overcharging him for inferior narcotics and that he had a new connection. However, he later accompanied Agent Bailey to an outside telephone booth from which Agent Bailey called Chicago. He reached Alice Gilmore. The Telephone Company records show a collect call February 5, 1958, from Tom Simmons (Agent Bailey) at Miami to Commodore 4–2496, Chicago. The subscriber of that number was James G. Evans. Agent Bailey testified to his discussion with Alice Gilmore on the telephone respecting dealings with James Jackson. James Jackson also spoke to her during this call. Through James Jackson, Agent Bailey met Bobbie Ritchie, Alice Gilmore's brother, also listed as a co-conspirator, who delivered some narcotics to Agent Bailey. He also telephoned Alice Gilmore again so that her brother could talk to her. Bobbie Ritchie testified to various trips he made to pick up and deliver narcotics. He spoke of turning over money for narcotics to Jeremiah Pullings and to Alice Gilmore. Although on cross-examination he denied that his sister Alice Gilmore knew of these transactions, in the light of all the other circumstances, the jury could reasonably have disbelieved this assertion.

■ After a close study of the lengthy and complex transcript of evidence in this case, we are unable to agree with appellant that the government failed to prove a single, unified, general and continuing conspiracy. The record shows that Jeremiah Pullings was operating in close cooperation with Delores Keeby and Alice Gilmore. There is a repeated pattern of delivery of narcotics and payment therefor. Complaints of poor quality

were not made to Delores Keeby who delivered the narcotics but to Jeremiah Pullings. . Alice Gilmore was clearly a vital participant in the overall conspiracy, involving activities in three states. The government showed more than mere association with, and knowledge of unlawful activity by, some of the members of the conspiracy. It was not essential to prove that Alice Gilmore dealt with all the conspirators and was conversant with all their activities. All of the conspirators, including Alice Gilmore, pursued the same object, though they sometimes acted separately and not always through common means. They all worked toward the same unlawful result. American Tobacco Co. v. United States, 6 Cir., 1944, 147 F.2d 93, 107 afd. 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). They all contributed to the success of the overall conspiracy regardless of whether they participated in the formation of the conspiracy or joined later. See United States v. Agueci, 2 Cir., 1962, 310 F.2d 817, 826, and cases therein cited; also Poliafico v. United States, 6 Cir., 1956, 237 F.2d 97, 104, cert. den. 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597.

The evidence supports the government's contention that Alice Gilmore knew of the conspiracy and was an active participating member of it.

With respect to consolidation of the indictments for trial, both appellant and the government invite our attention to Federal Rules of Criminal Procedure, Nos. 8 and 13, which provide:

"Rule 8. Joinder of Offenses and of Defendants

"(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

"(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

"Rule 13. Trial Together of Indictments or Informations

"The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information."

The indictment in Case No. 59 CR 468 charged Jeremiah H. Pullings, Alice Gilmore and Florine Whitlow Johnson with violations of Title 26 U.S.C. § 4705(a) and Title 21 U.S.C. § 174, in that, on or about January 11, 1958, in Chicago, Illinois, they sold Victoria Marie Basemore and James S. Bailey a quantity of heroin for $700. This indictment thus covers the same events concerned in Overt Acts 9, 10, and 12, of the conspiracy indictment in Case No. 59 CR 466. The indictment in Case No. 59 CR 467 charged two of the three Chicago policemen with violations of the same sections and covered the very events mentioned in Overt Acts 19 and 20 of the conspiracy indictment in Case No. 59 CR 466: a sale of heroin for about $4,700 in the early months of 1958. The indictment in Case No. 59 CR 470 charged Delores Keeby with violation of Title 21 U.S.C. § 174 in November 1956 by unlawful concealment of heroin. This falls within the period during which the general conspiracy indictment in Case No. 59

CR 466 charged Delores Keeby with conspiracy to deal unlawfully in heroin.

■ Evidence adduced by the government to prove the allegations of the indictments in Cases Numbered 59 CR 467, 468 and 470 was also relied on by the government to prove some of the allegations in Case No. 59 CR 466. Failure to allege in the indictments that the substantive offenses were committed in pursuance of the conspiracy did not operate to defeat consolidation for trial.

■ In Curley v. United States, 1947, 81 U.S.App.D.C. 389, 160 F.2d 229, 237, cert. den. 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850, rehrg. den. 331 U.S. 869, 67 S.Ct. 1729, 91 L.Ed. 1872, the court held that a substantive count in an indictment may relate to an overt act in a conspiracy count in the same indictment. See also Scott v. United States, 10 Cir., 1940, 115 F.2d 137, 138, cert. den. 312 U.S. 678, 61 S.Ct. 449, 85 L.Ed. 1117; Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). In our opinion, the consolidated charges could have been included in a single indictment. Consolidation for trial was proper under the provisions of Rules 8 and 13 quoted above. The jury heard no evidence in the trial of the consolidated counts which would not have been admissible in support of the Overt Acts alleged in the conspiracy indictment. Thus we conclude that appellant's claim of prejudice resulting from consolidation for trial lacks merit. United States v. Anderson, 7 Cir., 1939, 101 F.2d 325, 333, cert. den. 307 U.S. 625, 59 S.Ct. 822, 83 L.Ed. 1502; United States v. Marzano, 2 Cir., 1945, 149 F.2d 923, 924; United States v. Wright, 7 Cir., 1962, 309 F.2d 735, 739, cert. den. 372 U.S. 929, 83 S.Ct. 873, 9 L.Ed.2d 733. We do not find that the District Judge abused the discretion given to him, in instances where prejudice is asserted, to grant or deny severance. There appears to be no complaint of his admonitions and instructions to the jury regarding separate resolution of the guilt or innocence of each defendant.

Evidence was adduced at the trial of conversations overheard by federal narcotics agents by means of electronic devices. Appellant contends that this evidence should have been excluded on the basis of the Illinois Revised Statutes, Chapter 38, § 206 (now Art. 14) making electronic eavesdropping a crime in Illinois, which provides that:

"Any evidence obtained in violation of this Act is not admissible in any civil or criminal trial, or any administrative or legislative inquiry or proceeding, nor at any grand jury proceedings."

This Court has previously held that use of devices whereby one may overhear conversations beyond the area in which they might normally be heard does not render the evidence thus obtained inadmissible in a federal court. United States v. Vittoria, 1960, 284 F.2d 451, 455. Nor does the recording of the conversation alter the case. United States v. Williams, 7 Cir., 1963, 311 F.2d 721, 725.

■ However, it is not at all clear that the Illinois statute was violated in this instance. There is at least dicta [People v. Dixon, 22 Ill.2d 513, 516, 177 N.E.2d 224 (1961), cert. den. Beadle v. State, 368 U.S. 1003, 82 S.Ct. 637, 7 L.Ed. 2d 542] to support the government's interpretation (which we find persuasive) that the Illinois statute does not require consent of both parties to a conversation in order to make overhearing it noncriminal. The circumstances of the case before us indicate that Winston Mardis (one party to the conversation overheard in Illinois) did consent.

Another conversation, of which this appellant does not complain, was held in Detroit, Michigan, and was overheard with the consent of Victoria Basemore who was one of the parties to it.

Appellant claims that if the government had not destroyed its Exhibit 20, the package of marijuana which Agent Bailey testified he secured from Alice Gilmore, it

"* * * would have been available to prove that government exhibit 20 was perhaps wrapped in a Detroit newspaper proving that Bailey himself brought the package into her [Alice Gilmore's] home. Despite the handicaps, appellant endeavored to bring out this fact by cross-examination of government witnesses. * * * With regard to Exhibit 21, [the heroin which Victoria Basemore and Agent Bailey testified was sold to them on January 11, 1958] physical examination of the packages was the only way by which appellant could show that Basemore and Bailey were not telling the truth. * * * Destruction of these two exhibits by the government, under these circumstances, deprived appellant of vital evidence for her defense. Since the government had exclusive control of these two exhibits, it was unfair to allow secondary proof of their existence."

■ There is no evidence that the government acted in bad faith, or that the exhibits were not, as the testimony indicated, inadvertently destroyed after analysis by agents who were unaware that the exhibits were to be used in a future criminal proceeding. The fact that the exhibits were destroyed went to the weight of the testimony of the government's witnesses, including the chemist, as to the results of the analysis which had been made. A proper foundation was laid. Admission of testimony as to the contents of the exhibits did not constitute prejudicial error. Ware v. United States, 8 Cir., 1958, 259 F.2d 442, 444; Lebron v. United States, 1 Cir., 1957, 241 F.2d 885, 887, cert. den. 354 U.S. 911, 77 S.Ct. 1298, 1 L.Ed.2d 1429, rehrg. den. 354 U.S. 944, 77 S.Ct. 1422, 1 L.Ed. 2d 1543.

■ The District Court was without authority to grant a new trial once notice of appeal had been filed. This appellant had not yet filed her notice of appeal, but in vacating his order of May 4, 1961, because the co-defendants Jeremiah H. Pullings and Delores Keeby had filed their notice of appeal on May 2, 1961, the District Judge vacated the order as to appellant as well. However, there was a hearing on appellant's own motion, in which she incorporated all of the details of the shocking and reprehensible visits to the jurors' homes. On July 7, 1961, her motion was denied. We cannot see any abuse of discretion in the District Court's ruling.

Appellant's motion of April 30, 1963, after oral hearing on this appeal, sought leave to file a copy of House Bill No. 958, dealing with harassment of jurors, which was then pending before the 73rd General Assembly of the State of Illinois. We hereby grant that motion.

Whatever view we may hold of the inexcusable efforts to interrogate jurors, in this case the activity occurred after the jurors had brought in their verdicts. The incidents can have had no material bearing on the fairness of appellant's trial. The District Judge decided her motion for acquittal or new trial on July 7, 1961, long after the incidents and their resultant publicity, and after he had had an opportunity to evaluate their effect.

### No. 13418

Defendants-appellants Jeremiah Hope Pullings and Delores Keeby were also among the thirteen defendants charged in the indictments described above.

A motion for acquittal of Delores Keeby who was charged alone in the indictment in Case No. 59 CR 470 was sustained by the District Court.

The jury found both appellants guilty as charged in the general conspiracy indictment in Case No. 59 CR 466, and Jeremiah Hope Pullings guilty as charged in the indictment in Case No. 59 CR 468, the sale of narcotics to Victoria Basemore and Agent Bailey. The District Court sentenced Jeremiah Hope Pullings to 12 years' imprisonment in Case No. 59 CR 466 and to 5 years' imprisonment in Case No. 59 CR 468, to run concurrently; and sentenced Delores

Keeby to 6 years' imprisonment in Case No. 59 CR 466.

Appellants rely on alleged errors arising out of:

1. The consolidation of the four causes for trial and failure of the Court to sustain defendants' objections thereto;

2. The ruling permitting the Government to give evidence of what was learned by use of electronics devices;

3. The refusal of the Court to strike out the testimony of certain Federal Agents where the destruction of evidence had been ordered by the Government, which evidence was vital to the defense in meeting their testimony and that of another Agent against defendants;

4. The failure of the Court to require proof of a conspiracy before allowing certain hearsay evidence to be considered by the jury in its determination of the issues;

5. The failure of the Court to sustain defendants' motion for acquittal at the close of the Government's case, the Government having at this point failed to prove the conspiracy charged in the indictment;

6. The failure of the Court to sustain defendants' motion for acquittal at the close of all of the evidence in the case;

7. The failure of the Court to acquit defendants in cause No. 59 CR 466, after ruling that there was insufficient evidence to sustain a conviction of three principal alleged co-conspirators;

8. The vacation by the Court of its Order granting defendants a new trial;

9. The interference with the Court in making his decision on defendants' motions for acquittal by elements of the public press and by the jurors themselves and Government officials;

10. The Court's ruling permitting evidence to be heard by the jury of a nature highly prejudicial to defendants' cases, even though the same was subsequently ordered to be disregarded by them.

Most of these points, as is apparent, have been considered in our discussion of Appeal No. 13532. Our comments are equally applicable here and need not be repeated.

Appellant Jeremiah Pullings argues that Victoria Basemore was a "woman scorned" in his life, possibly jealous of Delores Keeby, and an alleged accomplice of his as well. He suggests that her testimony was, therefore, subject to grave suspicion. These are aspects of the evidence which would affect the weight of her testimony. The jury saw her in court and heard her testimony not only on direct, but on extensive cross-examination. Evidently the jury believed her account of the transactions covered by Case No. 59 CR 468. Agent Bailey also testified that he had a prior conversation with Jeremiah Pullings who told him he would shortly be "straight," which Agent Bailey understood to mean that Jeremiah Pullings would be able to take care of narcotics business. He testified further that (as Victoria Basemore had stated) she gave him written instructions for securing the January 1958 delivery of narcotics. It was not error to permit him to testify also to the fact of her statements at the time that she received these instructions from Jeremiah H. Pullings. As indicated, we do not agree with appellants that consolidation of the cases for trial was error.

We have carefully considered all other arguments presented on all three appellants' behalf, but deem it unnecessary to lengthen this opinion by comment on each one. We have weighed them and found them wanting in merit. We are satisfied that the judgments and convictions in the District Court must be affirmed.

Affirmed.