**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James C. HATCHER,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Haralabos MANETAS,
Defendant-Appellant.**

Nos. 80–5094, 80–5098.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 22, 1981.

Decided June 8, 1982.

Opinion on Denial of Rehearings
Sept. 16, 1982.

William Woodard, Deputy Federal Defender, Miriam L. Siefer, Chief Deputy Federal Defender, Detroit, Mich., for defendant-appellant in No. 80–5094.

Leonard R. Gilman, U. S. Atty., Keith J. Norman, Asst. U. S. Atty., Richard A. Rossman, Former U. S. Atty., Thomas Cranmer, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Lawrence S. Strauss, Charles S. Brown (court-appointed), Detroit, Mich., for defendant-appellant in No. 80–5098.

Before KENNEDY and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This case involves the consolidated appeals from the convictions of two defendants who were jointly indicted and jointly tried for federal narcotics crimes. Each defendant was charged with three counts that related to possession and distribution of heroin during the months of May to June of 1978, and each defendant was subsequently convicted by a jury on all three of these heroin-related counts. Furthermore, the joint indictment charged defendant Hatcher with two counts of distribution of cocaine in May of 1978. The joint indictment also charged Hatcher with one count of possession of cocaine at the time of his arrest in February of 1979.

The three cocaine counts against Hatcher were tried at the joint trial of Hatcher and defendant Manetas, and Hatcher was convicted by the jury on all three cocaine counts. Because the appeals of Manetas and Hatcher raise entirely separate questions they are treated separately below.

I. No. 80–5098, Defendant Manetas

Manetas contends that the trial court committed reversible error when it failed to grant his pretrial motion for severance. By that motion Manetas sought a separate trial on the ground that the three cocaine counts of the joint indictment related only to codefendant Hatcher, and that a joint trial would therefore prejudice Manetas. Manetas' memorandum to the trial court in support of that motion stated that severance was requested pursuant to Fed.R.Crim.Pro. 14. That rule provides that a court may grant appropriate relief when, in the exercise of its discretion, the court finds that joinder of offenses or of defendants will prejudice either a defendant or the government. The government's response to Manetas' motion focused on the question of prejudice under Rule 14, arguing that Manetas had not carried his burden of showing that a joint trial would unduly prejudice Manetas. After a hearing the district court denied the severance motion on the ground that Manetas had failed to carry his burden under Rule 14.

Unfortunately, in moving for a separate trial Manetas failed to emphasize the requirements of Fed.R.Crim.Pro. 8(b) for joinder of multiple defendants in a single indictment. Rule 8(b) states:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

While it is true that Rule 8(b) should be construed in favor of joinder, *United States v. Franks*, 511 F.2d 25, 28 (6th Cir.), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2654, 45 L.Ed.2d 693 (1975), it is also true that failure to meet the requirements of this rule constitutes misjoinder as a matter of law. Questions of prejudice are properly raised under Rule 14 only if the joinder of multiple defendants is proper under Rule

8(b). If multiple defendants are improperly joined under Rule 8(b) because they are charged with offenses that are unrelated, then they are to be considered as prejudiced by that fact and the trial judge has no discretion on the question of severance. Severance in such a case is mandatory. *United States v. Kaplan,* 588 F.2d 71, 74 (4th Cir. 1978); *United States v. Nettles,* 570 F.2d 547, 552 (5th Cir. 1978); *Ward v. United States,* 289 F.2d 877, 878 (D.C.Cir. 1961). *See also, United States v. Bova,* 493 F.2d 33 (5th Cir. 1974). No federal appellate cases to the contrary have been brought to our attention.

The joinder of multiple defendants is proper under Rule 8(b) only if each of the counts of the indictment arises out of the same act or transaction or series of acts or transactions, even if all counts of the indictment include a common defendant. *United States v. Kaplan, supra,* at 74; *United States v. Martin,* 567 F.2d 849, 853 (9th Cir. 1977); *United States v. Nettles, supra* at 551. In the present case the indictment on its face alleges no connection between Manetas and the cocaine-related charges against Hatcher. Neither does the record reveal any evidence of such a connection. As a matter of law the joinder of Manetas and Hatcher was therefore improper under Rule 8(b).

While a defendant may waive his rights under Rule 8(b) by failure to make a timely motion for severance, *United States v. Parson,* 452 F.2d 1007, 1008 (9th Cir. 1971), we are of the opinion that Manetas did not waive his Rule 8(b) rights in this case because his motion for a separate trial focused on Rule 14 rather than on Rule 8(b). Manetas' motion for separate trial and his supporting memorandum, though asking for relief under Rule 14, nonetheless called the court's attention to the fact that the joint indictment recited crimes with no alleged connection to Manetas. Furthermore, the government's brief in response to Manetas' severance motion began by reciting Rule 8(b)'s statement that joinder of multiple defendants in the same indictment is permissible only if the defendants are alleged to have participated in the same act or transaction constituting the offense or offenses.

In *Cupo v. United States,* 359 F.2d 990 (D.C.Cir.1966), *cert. denied,* 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967), the District of Columbia Court of Appeals concluded that a defendant had raised and therefore preserved an issue of misjoinder under Rule 8(b) though the facts in *Cupo* more strongly suggested a waiver of Rule 8(b) than do the facts of the present case. In *Cupo* a defendant's pretrial motion for severance alleged that offenses charged against him were distinct from the other defendants joined in the indictment and argued that a joint trial would prejudice him. That defendant not only did not mention Rule 8(b) in his severance motion or at the hearing on the motion, but also he did not even argue the issue of joinder on appeal. Nonetheless, the D.C. Circuit concluded that the issue of misjoinder under Rule 8(b) had been raised by the fact of the defendant's argument at the hearing that a charge against him was "distinguishable" from all the other counts and constituted a separate offense. *Id.* at 992, n.1. The D.C. Circuit then reversed that defendant's conviction on grounds of misjoinder under Rule 8(b).

In the present case, as in *Cupo,* the issue of proper joinder in the face of an indictment alleging crimes unrelated to a joint defendant was raised. Furthermore, in the present case defendant Manetas has reasserted his contention that joinder was improper on appeal. Under these circumstances we believe that Manetas' motion for a separate trial was minimally sufficient to raise and to preserve the question of misjoinder under Rule 8(b). *See, United States v. Bova,* 493 F.2d 33, 37 (5th Cir. 1974) (failure to renew motion for severance after properly raised and improperly denied does not waive right to appeal denial).

On appeal the government argued that Manetas has failed to show that he was prejudiced by his joinder with Hatcher and that it was within the district court's discretion to refuse to sever pursuant to Fed.R.

Crim.Pro. 14. However, unlike the balancing of judicial efficiency against the potential for prejudice that is required by Rule 14, the joinder requirements of Rule 8(b) leave nothing to the discretion of the court. When misjoinder occurs severance is mandatory and failure to sever is error. We can take cognizance of the government's argument that Manetas in fact suffered no prejudice from the improper joinder only by the application of the harmless error rule of Fed.R.Crim.Pro. 52.

We are of the opinion that Rule 52 must be applied with great caution in instances of misjoinder under Rule 8(b). Because misjoinder occurs under Rule 8(b) when a defendant is joined in an indictment containing charges that are unrelated to that defendant, there is a temptation to find that the trier of fact was able to keep the unrelated charge separate from the question of the particular defendant's guilt, and that the misjoinder was therefore harmless. However, to apply this reasoning liberally would nullify the requirements of Rule 8(b). Consequently, we believe that misjoinder should be found harmless only where the unrelated charge and the evidence supporting that charge is such an inconsequential part of the joint indictment and trial that no possible harm from the misjoinder could reasonably have occurred. *E.g., United States v. Martin, supra* at 854.

Such a situation could occur when the evidence of the improperly joined offense would nonetheless have been admissible to prove the properly joined offenses. *United States v. Seidel,* 620 F.2d 1006 (4th Cir. 1980); *United States v. Granello,* 365 F.2d 990, 995 (2d Cir. 1966), *cert. denied,* 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967). In keeping with the requirement that the evidence must be an inconsequential part of the indictment and trial, if the extent of the proof is significantly greater than that reasonably used to demonstrate other crimes or if the focus of the trial is shifted away from proof of the properly joined offense, then prejudice is shown. *United States v. Satterfield,* 548 F.2d 1341, 1346 (9th Cir. 1977), *cert. denied,* 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978).

In the present case the indictment alleged no connection between Manetas and any transactions related to the cocaine charges. Rather, the government's proof against Manetas was directed at showing that Manetas was Hatcher's source of heroin. The cocaine count evidence would not be admissible against Manetas. In these circumstances, we cannot say that the misjoinder of Manetas and Hatcher was harmless. These facts pose too great a risk of the type of prejudice and confusion that Rule 8(b) seeks to avoid by regulating the joinder of multiple defendants. Instructions to the jury to consider the proof against each defendant separately cannot replace adherence to the requirements of Rule 8(b). Therefore, we hold that failure to grant Manetas' motion for severance was error and that the conviction of Manetas on three counts of the joint indictment must be reversed.

II. No. 80-5094, Defendant Hatcher

Defendant Hatcher raises a number of issues on appeal. Because we decide that the first of these requires reversal of Hatcher's convictions on all counts, we do not reach the other issues presented by him.

Hatcher contends that the cocaine seized from the basement of his residence at the time of his arrest was discovered as the result of an illegal search and should therefore not have been admitted as evidence. It is uncontradicted that the arresting agents conducted a warrantless search of Hatcher's entire dwelling subsequent to arresting Hatcher and placing him under their control. It hardly needs to be noted that warrantless searches of dwellings are per se unreasonable under the Fourth Amendment, subject only to a few narrowly delineated exceptions.

During a pretrial hearing on Hatcher's motion to suppress the cocaine seized at the time of his arrest, conflicting testimony was given regarding when and where the cocaine was discovered. Clearly, the agents conducted a "sweep search" of the entire house, including several rooms in the basement, for the asserted purpose of determin-

ing whether other persons or weapons were present. However, there was dispute whether the cocaine had been visible at the time and place where Hatcher was apprehended, or whether it was discovered only during the search subsequent to the arrest. Both arresting agents testified that the cocaine had been found in "plain view" on top of a water heater in the basement. One of the agents stated that the cocaine could be seen from the spot where Hatcher was apprehended. The other agent could not remember whether the water heater could be seen from the place where Hatcher was found or if it was discovered during the subsequent search.

Hatcher's counsel has erroneously stated in his appellate brief that Hatcher testified that the cocaine was in a desk drawer and hence was not in "plain view." Actually, Hatcher testified that the cocaine was on a desk, presumably in plain view of anyone with a right to be where the desk was located. However, Hatcher testified that the desk was underneath a stairway and not visible from the spot where the agents arrested him.

In denying Hatcher's motion to suppress, the court concluded that the agents' exploration of the basement subsequent to the arrest was justified by the inherent dangers attending narcotics arrests and that the agents therefore had a right to be at whatever place in the basement the cocaine was discovered "in plain view." The district court's discussion of the search issue contains an implicit but rather clear rejection of the plain view exception unaided by the sweep search approval. Thus, we can affirm the district court's denial of Hatcher's suppression motion only if we conclude that the agents' search of the basement was proper.

Certainly the agents' warrantless search was not proper unless the circumstances surrounding that search provided an exception to the warrant requirement of the Fourth Amendment. We conclude, however, that the "plain view" doctrine cannot provide that exception in this case. The district court did not find that the cocaine was inadvertently discovered within the plain view of the agents at the time and place of Hatcher's arrest, but rather that the "protective sweep" type search that the agents conducted subsequent to the arrest was proper and gave the agents the right to be at the place in the basement where the cocaine was discovered in "plain view." If this sweep search was proper as an exception to the warrant requirement in order to protect the arresting agents, then whether the cocaine was in plain view or not is largely irrelevant. If the circumstances permitted a protective search, discovery of the cocaine would have been proper since the district court found that it was seen in the basement. If the protective search was improper, then the court's finding that the agents had a right to be wherever it was in the basement that they discovered the cocaine cannot be sustained.

■ Under certain exigent circumstances an unwarranted "protective sweep" search for other persons during the execution of an arrest warrant is permissible. *E.g., United States v. Bowdach*, 561 F.2d 1160, 1168–69 (5th Cir. 1977); *Kinser v. Cooper*, 413 F.2d 730, 733 (6th Cir. 1969). However, this exception is no more lightly taken than any other instance where the government seeks to justify an unwarranted search, and the burden on the government to show the exigency that made an unwarranted search imperative is a heavy one. *E.g., United States v. Gamble*, 473 F.2d 1274, 1277 (7th Cir. 1973) (even fact that arresting officers knew defendant's home to be an armed fortress did not justify protective sweep search following defendant's arrest where officers could have obtained search warrant prior to arrest). The Supreme Court stated:

> We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police ... [W]e cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek

exemption from the constitutional mandate that the exigencies of the situation made that course imperative. *McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948).

■ In order that a protective sweep search be "made imperative" for law enforcement agents who enter a home to execute an arrest warrant, there must be at the time of the search some basis for a reasonable belief by the officers that there may be other persons on the premises who could pose a danger to the agents. *United States v. Gardner,* 627 F.2d 906, 909 (9th Cir. 1980). Courts should be cautious "in limiting the ability of police officers to protect themselves as they carry out missions which routinely incorporate danger," *United States v. Coates,* 495 F.2d 160, 165 (D.C. Cir.1974). Nonetheless, officers must be able to articulate justification for a warrantless search. *Id.*

■ In the present case the district court stated that there was no evidence that Hatcher was a dangerous individual and no indication that any other persons were in the house at the time of Hatcher's arrest. In the face of these specific findings we believe it was error for the district court to conclude that a search of the basement subsequent to Hatcher's arrest and handcuffing was justified solely because "the subject of drugs is a dangerous one, dangerous for all of those persons involved in it, especially those who are on the law enforcement side." That reasoning may be too easily applied to any number of categories of criminal arrests, and would permit wholesale abrogation of the Fourth Amendment reasonableness requirement whenever an arrest is made in such subject areas. On the facts of this case the warrantless search of the basement was not justified on the basis of a need for protection of the arresting agents. Because the burden of showing exigent circumstances justifying the warrantless search was on the government, the district court's denial of Hatcher's suppression motion was error.[1]

■ Where evidence seized in violation of the Fourth Amendment rights of a defendant is erroneously admitted, any conviction of that defendant which might have been influenced by the admission of that evidence must be reversed. *Fahy v. Connecticut,* 375 U.S. 85, 86, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). Only if the erroneously admitted evidence could not have contributed to the conviction can that error be found harmless beyond a reasonable doubt.

In the present case it cannot be disputed that Hatcher's conviction on the charge of possession of cocaine at the time of his arrest was influenced by the admission of the cocaine seized at his arrest. Consequently that conviction must be set aside.

■ The question of the effect of the erroneously admitted cocaine evidence on Hatcher's convictions on the remaining five counts presents a closer issue. Arguably, because these counts were unrelated to the separate count of possession, the evidence of possession may not have influenced the jury's determination on the other five charges. However, the effect of the erroneously admitted evidence on Hatcher's convictions cannot be considered harmless merely because those charges are technically unrelated to the erroneously admitted cocaine evidence. "Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the ... [erroneously admitted evidence] ... on the minds of an average jury." *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969). Only if our review of the entire record leaves us convinced that the impact of the cocaine evidence was in-

1. The district court's refusal to hold the unwarranted search invalid was not based on a finding that the search was proper as "incidental to arrest." *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Since such a search must be limited to the area from which the arrestee might have obtained a weapon or evidence, and since the court in the present case did not resolve the conflicting testimony on the location of the cocaine at the time of arrest in favor of the government, the district court's decision cannot be affirmed on the ground that the search was incident to an arrest.

consequential to the jury's determination of Hatcher's guilt can we consider the erroneous admission to be harmless error. *See, id.*

In the present case Hatcher was convicted on five narcotics charges based on events alleged to have occurred in the first half of 1978. The cocaine was seized at the time of Hatcher's arrest in February of 1979. Hatcher's defense to all counts was entrapment, claiming that he only became involved in narcotics because a government informant whom he considered to be his friend and other government agents reportedly solicited him early in 1978 to procure drugs for them. Hatcher testified that he had never had anything to do with drugs before these solicitations, that he only became involved with drugs out of friendship and pity for the informant, and that he made no profit from his involvement in narcotics on behalf of the informant and other agents.

With respect to at least some, if not all, of the transactions involving Hatcher, a government agent testified that Hatcher had not initiated the drug transactions, but rather that the agent himself had initiated the contacts. The government informant, however, testified that Hatcher had first approached him concerning possible drug deals.

On these facts the jury was confronted with a genuine issue whether Hatcher was predisposed to possess and distribute narcotics, or whether Hatcher was induced to deal in drugs by and for his friend the informant. The last of the transactions that Hatcher contended that he had undertaken at the government agents' urging occurred in June of 1978. However, evidence was erroneously admitted at trial that Hatcher was in possession of cocaine in February of 1979, eight months later.

We are of the opinion that the effect of this evidence on an average jury would be to influence them to disbelieve Hatcher's contention that he had only been involved in drugs at the behest of the government agents. The average juror, we feel, would be likely to discount that testimony, and consequently Hatcher's only defense, in light of the evidence that Hatcher had cocaine in his home eight months after the last transaction that was allegedly induced by the agents. Because of this "probable impact . . . on the minds of an average jury," *Harrington, supra*, we cannot say that the erroneous admission of the cocaine seized at Hatcher's arrest was inconsequential to the jury's determination of Hatcher's guilt on any counts of the indictment. Therefore Hatcher's convictions on all counts must be reversed.

For the reasons stated above all convictions of each defendant-appellant must be reversed and the judgments of conviction vacated, and the causes are remanded for further action not inconsistent herewith.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

I respectfully dissent from the majority's reversal of the convictions in these consolidated appeals.

Manetas' objection to improper joinder under Rule 8(b) was not specifically raised until appeal and was therefore waived. Misjoinder of defendants is an objection based on a defect in the indictment and such issues must be specifically presented to the trial court prior to trial, Fed.R.Crim.P. 12(b)(2), or they are waived. *Id.* Rule 12(f). *See United States v. Friedland*, 391 F.2d 378 (2d Cir. 1968), *cert. denied*, 404 U.S. 867, 92 S.Ct. 143, 30 L.Ed.2d 111 (1969). A finding of waiver is required in this case because the substance of Manetas' motion for a separate trial and accompanying brief did not specifically raise Rule 8(b) issues, a motion under Rule 14 does not inherently raise Rule 8(b) issues and because the indictable acts were sufficiently close to being either a series or part of a single scheme for distributing controlled substances that the District Court was not required to discover this issue *sua sponte* and Manetas was factually on notice of a Rule 8(b) issue.

Manetas moved for severance under Fed.R.Crim.P. 14 on the ground that he was prejudiced by the joinder of three heroin counts in which he and Hatcher were

charged with three other counts in which Hatcher was charged with cocaine offenses. Defendant Manetas' brief in the District Court in support of his motion and the government's brief in the District Court in opposition were both directed to Rule 14. The only reference to Rule 8(b) in the record in the District Court is in the first sentence of the government's brief in opposition where it is recited "Rule 8(b) permits joinder of defendants charged in the same indictment 'if they are alleged to have participated in the same act or transaction or the same series of acts of [sic] transactions constituting an offense or offenses.'" This statement, rather than alerting the trial judge to possible misjoinder under Rule 8(b) appears to me to be a statement as to why the counts were properly joined; a statement that they were a series of transactions. The brief then goes on to articulate the reasons why, under Rule 14, Manetas is not entitled to a severance. When the District Judge ruled on the motions for severance he addressed the issue of prejudice and based his decision on Rule 14, quoting from the discussion of that rule in Moore's Federal Practice. Manetas renewed his motion for severance several times during the three-week trial. Arguments were apparently directed to the prejudice standard of Rule 14. Nothing in the record suggests that reference was made by citation or by argument to improper joinder under Rule 8(b) for want of an act or transaction or series of acts or transactions in which both defendants participated. Nor does it appear that Manetas attempted to redirect the focus of the District Court away from "prejudice" considerations to "act", "transaction" or "series" considerations.

In paragraph four of his motion before the District Court Manetas states: "Counts III, IV and VI allege crimes solely against defendant, James C. Hatcher." However, Rule 8(b) expressly provides that "all of the defendants need not be charged in each of the counts." Merely pointing out to the District Court that Manetas was not charged in the cocaine counts is insufficient to raise the Rule 8(b) misjoinder issue, absent specific allegations that Manetas and Hatcher did not participate in a transaction or series of transactions, since the fact of not being charged in all counts is in itself consistent with proper joinder.

Rule 8(b) issues are not inherently before the trial court in Rule 14 motions.[1] Rule 8(b) and Rule 14 present separate and distinct issues, involve different judicial functions and are subject to different standards of review. Rule 8(b) permits the joinder of two or more defendants in a single indictment if sufficient nexus exists between them and the single or multiple acts or transactions charged as offenses. The question of misjoinder is one of law for the trial and appellate courts and no discretion is involved. *United States v. Wasson*, 568 F.2d 1214, 1221 (5th Cir. 1978). Although Rules 8(b) and 12(b)(2) provide the vehicle by which a serious defect in the indictment may be addressed, misjoinder is a waivable objection. Fed.R.Crim.P. 12(f). Rule 14 provides permissive relief from the prejudicial joinder of defendants and involves the broad exercise of discretion by the trial court in determining whether sufficient prejudice exists, as a matter of fact, to prevent a defendant from obtaining a fair trial. This discretionary determination is

---

1. The cases cited by the majority for the proposition that severance is mandatory if multiple defendants are improperly joined provide no support for their conclusion that Rule 8(b) issues are inherently subsumed within a Rule 14 motion for severance. In three cases, the Rule 8(b) issue was specifically presented to the trial court by cite to Rule 8(b) or by reference to "misjoinder" of defendants. *United States v. Nettles*, 570 F.2d 547, 550 (5th Cir. 1978) (alleges trial court erred in denying motion for severance on grounds of misjoinder under Rule 8(b)); *United States v. Bova*, 493 F.2d 33, 37 (5th Cir. 1974) (motion for severance in trial court charged improper joinder citing Rule 8(b)); *Ward v. United States*, 289 F.2d 877, 878 (D.C.Cir.1961) (motion for severance in trial court specifically claimed prejudicial *misjoinder*). In the above cases, no mention is made of Rule 14 and its generalized standard of prejudice. The remaining case, *United States v. Kaplan*, 588 F.2d 71 (4th Cir. 1978), provides insufficient facts to determine whether the Rule 8(b) issue was raised before the trial court either by substance or cite.

reviewable on appeal only for an abuse of discretion. *See Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954).

Rule 14 is neither a repetition of Rule 8(b) nor is 8(b) a subset of Rule 14. The election, severance and separate trial provisions of Rule 14 are clearly permissive whereas the misjoinder implications of Rule 8(b) should mandate a particular result. Rule 14, therefore, operates on the presumption that Rule 8(b) issues have been resolved either by unsuccessfully questioning the propriety of joinder under Rule 8(b) or by waiving Rule 8(b) issues. Such a construction is consistent with the plain language of Rule 14 and is necessary to give independent meaning to the waiver provisions of Rule 12(f). To silently subsume Rule 8(b) issues in a Rule 14 motion would allow defendants to merely allege prejudice in general terms and force the government or trial court to expend time and resources sua sponte policing each indictment for Rule 8(b) issues. Under Rule 12(b) and (f) a defendant clearly has the burden of raising waivable defects in an indictment. Neither may Rule 8(b) issues be raised on appeal as plain error since the waivability of such defects in the indictment is clearly inconsistent with a plain error argument.

Apart from the legal distinctions between motions under Rule 8 and Rule 14, this is not a case where the joint counts were totally unrelated factually. All the counts involved Hatcher. With the exception of count 6, all the counts involved narcotics transactions which were within the period of the conspiracy involving both Manetas and Hatcher alleged in count 1. The sale of cocaine, which is the subject matter of count 3 in which only Hatcher is charged, occurred when the informant and agent Higgins, who had purchased heroin from Hatcher *and* Manetas eight days earlier (the subject of count 2) was attempting a second purchase of heroin; heroin was not available and she purchased a small sample of cocaine. Similarly, the cocaine purchased in count 4 came about following a conversation between agent King and Hatcher on May 17, when King indicated he would like to buy either some cocaine or some heroin. (Tr. Vol. 8, p. 54). This earlier conversation, as well as this purchase of cocaine, led to the heroin purchase which is the subject matter of count 5, a count in which both Hatcher and Manetas are charged. It was during this transaction on May 31st that Hatcher asked agent King if he was still interested in buying some heroin and if he had talked to Bobbie (the name used by Manetas in his dealings with agent King) about it. These facts sufficiently demonstrate the non-obviousness of the improper joinder issue to find that it has been waived by failing to cite Rule 8(b) or argue it specifically in substance.[2]

I would also find that the joinder of these counts was harmless in this case. Most of the evidence relating to the cocaine counts would have been admissible in the joint trial of Manetas and Hatcher on the three heroin counts. The contacts between the agents and Hatcher which resulted only in the purchase of cocaine were so inextricably interwoven into the conspiracy to distribute heroin that there would necessarily have been testimony about them in a separate trial. Hatcher would have then raised his

---

**2.** The law is less than clear as to what constitutes a series of transactions. The standards applied are imprecise, the determinations are wholly fact dependent, decisions conflict and are otherwise incapable of being reconciled in many instances. Following are a number of cases in which courts have found joinder under Rule 8(b) proper.

In *United States v. Granello*, 365 F.2d 990 (2d Cir. 1966), *cert. denied*, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458, *rehearing denied*, 387 U.S. 949, 87 S.Ct. 2072, 18 L.Ed.2d 1340 (1967), defendants were charged with a conspiracy to defraud the United States Treasury by concealing income from the sale of stock in a petroleum company. Each was also charged in separate counts with failing to report individual income. The conspiracy count was dismissed but defendants were convicted on the individual charges. On appeal the harmless error rule applied; the evidence of joint action by defendants relating to the petroleum stock conceal-

ment would have been admissible at separate trials.

In *United States v. Pullings*, 321 F.2d 287 (7th Cir. 1963), several narcotics conspiracy counts involving different individuals were joined with several substantive narcotics counts also involving different individuals. The Seventh Circuit held that since the major defendant was operating a narcotics business in close cooperation with the other defendants, the court could treat these narcotics transactions as if they contributed to the success of the overall conspiracy. "[A]ll worked toward the same unlawful result." *Id.* 294.

In an Eighth Circuit case, *Haggard v. United States*, 369 F.2d 968 (8th Cir. 1966), Haggard, an employee of a bank, was charged with conspiring with Alley and another to defraud the bank. Three other defendants were charged with aiding and abetting Haggard in his embezzlement. The court held that the defendants

were properly joined. A broad interpretation of Rule 8(b) was encouraged in the interest of more efficient administration of criminal trials. *Id.* at 973. The court stated:

[We do not] think that "participation" in "the same series" requires "participation" in each transaction of the series. *See Wiley v. United States*, 4 Cir., 277 F.2d 820. The language of Rule 8(b) assumes certain evidence may be admitted against one defendant not necessarily applicable to another. *Id.*

Since there was a common participant, a similar scheme to defraud the bank on all counts, similar acts by Haggard, all the acts occurred during the same time period, and all actions aided and abetted, the court found that one could imply a clear discernible pattern of action involving Haggard and his accomplices in the same series of transactions.

Joinder must be viewed on a case by case basis. If the indictment invites "joint proof" such as here, e.g. partial payment of one loan with another, or infers a common pattern of action, prima facie joinder is shown. The jury should be able to see how each piece fits together even though strangers "aid and abet" the common thief at successive stages of the overall fraud.

*Id.* at 974.

In *United States v. Roselli*, 432 F.2d 879 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971), four individuals were charged in both conspiracy and substantive counts with participating in an organized scheme to cheat for profit in card games. In addition, three defendants were charged with failing to report income from these card cheating activities. Each argued that they were improperly joined. Focusing on the procedural benefits of joinder the court recited that the test for joinder was satisfied whenever the common activity constitutes a substantial portion of the proof of the joined charges. *Id.* at 899. Alternatively it found harmless error, since only a small portion of the additional evidence was needed to prove the tax fraud in the individual cases.

The Ninth Circuit held that joinder of defendants was proper in *United States v. Patterson*, 455 F.2d 264 (9th Cir. 1972), a case in which two defendants were charged with multiple counts of mail fraud and one of the two was charged with a third defendant for a similar offense. The court focused on the fact that one defendant was named in all of the counts.

Review of the indictment and the evidence introduced reveals that the joinder of appellant and defendant Aquino was proper. This evidence, supporting the schemes alleged in the indictment, revealed that the schemes were basically the same. Moreover, Mortillaro is charged in every count of the indictment, providing a common link between all of the defendants.

Therefore, it cannot be said that there was a joinder of totally unrelated defendants charged with distinct, unrelated crimes. Rather, it appears that appellant and the others were charged with the same basic fraudulent scheme which they jointly and individually executed within a six-month period. *Id.* at 266.

The court in *United States v. McDaniel*, 538 F.2d 408 (D.C.Cir.1976), permitted joinder of all defendants even after it dismissed the conspiracy count that charged all defendants with a single conspiracy to promote an illegal lottery through bribery of law enforcement officers. In addition to the dismissed "all-encompassing" conspiracy, the indictment contained four counts charging less than all defendants with conspiracy to bribe law enforcement officers and two counts charging the appellant with having offered bribes to a police officer during the course of an undercover investigation into police conduct. The court stated:

Joinder of related conspiracies is proper where each count is part of the same series of transactions constituting an overall conspiracy, *see United States v. Papadakis*, 510 F.2d 287, 296 (2d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975), especially since the phrase "same series of acts or transactions" has been interpreted broadly in the interest of efficient judicial administration.

\*   \*   \*   \*   \*   \*

Similarly, the two substantive bribery offenses were properly consolidated. Rule 13 permits consolidation of two indictments if the counts could properly be joined in one indictment under Rule 8(b). Because the evidence indicated that these payments also were made for the purpose of protecting appellant's numbers operation ... they too arose from the same series of acts or transactions as the other substantive bribery offenses and the overall conspiracy count.

*Id.* at 411.

In *United States v. Evans*, 542 F.2d 805 (10th Cir. 1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977), appellants, prisoners at the United States Penitentiary at Leavenworth, Kansas, were charged with causing a riot at the penitentiary. Some, but not all, were charged with assault with intent to murder certain guards. They had moved for a severance. The court found that "appellants have not shown prejudice from denial of the motion [for severance] to warrant a finding of abuse. *See United States v. Earley*, 482 F.2d 53 (10th Cir.)." *Id.* at 809.

In *United States v. Weinrich*, 586 F.2d 481 (5th Cir. 1978), *cert. denied*, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979), charges of importing marijuana and possessing marijuana with intent to distribute and importing hashish and possessing hashish with intent to distribute and distributing marijuana knowing it would be imported into the United States were held properly joined as a series of transactions even

defense of entrapment which would have required evidence of all of his transactions with the agents. Further, if, as the majority concludes, Hatcher's possession of a small quantity of cocaine at the time of his arrest was so critical to his entrapment defense then evidence of that possession would also have been admissible to refute that defense. The only evidence not admissible in a sepa-

though the hashish counts related to only some defendants. The court determined that "there is a substantial identity of facts as to all of the substantive counts that were charged against all defendants, and all counts arose from the same series of acts or transactions as required by the Rule." Id. 495.

Two importers had devised a scheme to bribe customs inspectors to permit importation of haberdashery in United States v. Lev, 22 F.R.D. 490 (S.D.N.Y.1958), aff'd, 276 F.2d 605 (2d Cir.), cert. denied, 363 U.S. 812, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960). Various counts charged smuggling and bribery involving the importers and customs inspectors. A customs inspector charged in only some counts was held properly joined with the importers. The requirements of Rule 8(b) were met since even though there were five separate conspiracies charged, they all flowed from the same overall plan or scheme to import haberdashery illegally.

In contrast to the foregoing cases a number of courts have found joinder improper under Rule 8(b).

In the Fourth Circuit case of Ingram v. United States, 272 F.2d 567 (4th Cir. 1959), Ingram was charged in one count with possessing non-tax paid liquor. Persons by the name of Gill, neighbors of Ingram, were charged in another count with the same offense. Both offenses occurred on the same date but there was no other connection. The court held the defendants were improperly joined. The court refused to apply the harmless error rule.

> Just as Rule 14 does not permit the Government to circumvent the prohibition of Rule 8(b), neither does the Harmless Error Rule, Rule 52(a), have this effect. The error here was no mere technicality. The rule against jointly indicting and trying different defendants for unconnected offenses is a long-established procedural safeguard. Its purpose is to prohibit exactly what was done here, namely, allowing evidence in a case against one defendant to be presented in the case against another charged with a completely disassociated offense, with the danger that the jury might feel that the evidence against the one supported the charge against the other. It is not "harmless error" to violate a fundamental procedural rule designed to prevent "mass trials."

Id. 570–71.

In Ward v. United States, 289 F.2d 877 (D.C. Cir.1961), Ward was charged jointly with one

rate trial would have been the evidence that the substance sold for cocaine was cocaine. Since that fact was never an issue in the trial the admission of that evidence was harmless beyond a reasonable doubt.

The issues for jury decision in this case were especially clear because both defendants testified. Hatcher admitted all the transactions but claimed entrapment by

Lyons for a narcotic sale on September 1, 1959. He was also charged with a sale involving only himself on July 31, 1959. Yet another count charged Lyons only with a sale on December 11, 1959, which was unrelated to the other sales. The defendants were held to be improperly joined, even though Lyons was acquitted on the count in which only he was charged.

Spector and Scott were charged in one count of a nine-count indictment with conspiracy to defraud federal credit institutions in United States v. Spector, 326 F.2d 345 (7th Cir. 1963). The remaining counts charged Spector and two other persons with making false statements to the Federal Housing Administration. These defendants were held to be improperly joined. Although Spector was charged as defendant in all of the counts, Scott was a complete stranger to the false statements made to the Federal Housing Administration. Further, there was no overlapping in time. With respect to Scott and Spector the court concluded, "it is apparent in the instant case that there is no identity of defendants, of the character of the offenses, the allegations of fact, or of the time. Therefore, a severance should have been granted." Id. 351.

In United States v. Bova, 493 F.2d 33 (5th Cir. 1974), defendants were held improperly joined when jointly charged in two counts of unlawful possession and distribution of heroin and one defendant alone was charged in five additional counts of distribution of heroin.

That the acts occurred at about the same time or that they constituted violations of the same statute was held to be insufficient to support joinder of defendants in United States v. Satterfield, 548 F.2d 1341 (9th Cir. 1977), cert. denied, 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978). Merriweather and Satterfield were joined in an indictment relating to five Oregon bank robberies. They were jointly charged with two robberies and Merriweather was charged with three additional robberies.

Finally, in United States v. Whitehead, 539 F.2d 1023 (4th Cir. 1976), joinder was held to be improper where a federal drug enforcement agent purchased cocaine from defendants Jackson and Meredith on one day and from Jackson and Whitehead on another day. There was no relationship between Whitehead and Meredith except that both lived in the same building, and both were associated with Jackson.

government informants. He also testified that Manetas had nothing to do with the sale of heroin. Manetas also denied having anything to do with the sale of heroin although admitting that he had a conversation with agent King on the day of the sale which is the subject matter of count 5, and that he was present and talking to Hatcher on the day of the sale to agent Higgins which is the subject matter of count 2. There was no possible way in which the jury could have been confused by the joinder of counts.

Because defendant Manetas failed to assert misjoinder under Rule 8(b) and because he was not prejudiced if misjoinder did occur, I would affirm his conviction.

I also dissent from the majority's holding that the District Court erred in failing to suppress the cocaine which was the subject of count 6. Agents went to Hatcher's home with an arrest warrant. The District Court found that they announced their presence and waited an appropriate interval. The door of the house was unlocked. They entered, heard a voice from the basement, and went directly to the basement where they arrested Hatcher and advised him of his constitutional rights.

One of the arresting agents testified that he saw cocaine and some scales on the top of a water heater, while he was placing the defendant under arrest. Another of the agents testified that while Hatcher was being placed under arrest he made a protective sweep of the basement to be sure no one else was present. The agent also testified that the cocaine was on the top of the water heater. He testified that he returned to the water heater and seized the cocaine after making the sweep. At that time he could not recall the location of the water heater. Defendant testified first that he was arrested at the top of the stairs leading to the basement and later that he had retreated part way down the stairs at the time he was arrested. The District Court accepted the testimony of the agents as to where the defendant was arrested, rejecting Mr. Hatcher's testimony. Although the District Judge did not make a specific finding of where the cocaine was located in the basement, he did find it was in plain view. He apparently rejected defendant's testimony that marijuana, which was also seized, was in a desk and the cocaine on the top of the desk. Had he credited defendant's tes-

timony he would have had to suppress the marijuana, at least, since it could not have been in plain view. A third agent, Crep, who testified at the trial but did not testify on the motion to suppress, testified that Hatcher was arrested right next to the hot water heater. (Tr. Vol. 6, p. 18). Defendant, who testified at the suppression hearing, made no claim that the water heater could not be observed from the location where the officers testified they arrested him. Because the District Judge found the protective sweep of the basement was reasonable under the circumstances, he stated that it was unnecessary to make a finding of whether the cocaine was visible from the location where the arrest was made. If the sweep was improper, as the majority concludes, the case should be remanded to the District Court for the limited purpose of making additional findings as to where the cocaine was located and whether the cocaine could be observed from the location where defendant was placed under arrest.

I, however, would affirm the holding of the District Court that a protective sweep of the basement was justified in this case. The majority acknowledges that courts "should be cautious" in limiting the ability of police officers to protect themselves as they carry out missions which routinely incorporate danger. At 443–444. The District Court, recognizing that traffic in hard drugs is "dangerous for all those persons who are involved in it, especially those who are on the law enforcement side," concluded that it was appropriate to make a protective sweep of the immediate environs of the arrest, in this case, the basement. This Court has recognized that drugs and weapons are sufficiently related that evidence of the presence of weapons is relevant to help prove trafficking. *United States v. Marino*, 658 F.2d 1120, 1123 (6th Cir. 1981); *United States v. Korman*, 614 F.2d 541, 566 (6th Cir.), *cert. denied*, 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980). The Supreme Court has recognized the right of a law enforcement officer to protect his own safety even if that protection infringes on fourth amendment rights. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), an officer's pat down of a suspect for weapons without probable cause was justified when the stop was based on a reasonable suspicion. In *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 33 L.Ed.2d 685 (1969), the Supreme Court held that a full search of the area within the reach of a

person being arrested is permitted even to the extent of opening closed drawers, again for the protection of the arresting officer. The basement here had finished and unfinished portions. A quick look into these adjacent rooms to see if persons are present appears reasonable; not to do so would expose the officers to unnecessary danger. The Supreme Court's most recent recognition of the hazards police officers are exposed to in making an arrest and the need to protect their safety appears in *Washington v. Chrisman*, ── U.S. ──, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982). In *Chrisman* the Court found an arresting officer's entry into the college room of a young man who had gone there to get identification to be reasonable.

Every arrest must be presumed to present a risk of danger to the arresting officer. Cf. *United States v. Robinson, supra*, [414 U.S. 218] at 234 n.5 [94 S.Ct. 467 at 476 n.5, 38 L.Ed.2d 427]. There is no way for an officer to predict reliably how a particular subject will react to arrest or the degree of the potential danger.

. . . . .

We hold, therefore, that it is not "unreasonable" under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates, following the arrest. The officer's need to ensure his own safety—as well as the integrity of the arrest—is compelling. Such surveillance is not an impermissible invasion of the privacy or personal liberty of an individual who has been arrested.

*Id.* at ──, 102 S.Ct. at 817.

The majority appears to suggest that a search warrant should have been requested. There was, however, no basis here to seek a search warrant, nor will there be in a great many instances when an arrest warrant is served. The majority notes that the agents had no knowledge that anyone else was present. But by the same token they had no knowledge that no one else was present. We are balancing the safety of the police officers against a slight additional intrusion on defendant Hatcher's privacy already significantly reduced by his arrest. The balance here must fall on the side of safety.

I would hold the protective sweep of the basement lawful and affirm Hatcher's conviction.

### On Rehearing

Plaintiff-appellee's motions for rehearing having come on to be considered and of the judges of this Court who are in regular active service less than a majority having favored ordering consideration en banc, the motion has been referred to the panel which heard the appeal, and it further appearing that the motion for rehearing is without merit,

IT IS ORDERED that the petitions be, and they hereby are denied.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

I dissent from the order of the Court in this case denying the government's petition for en banc reconsideration.

The *Manetas* case (No. 80–5098) raises significant questions concerning the interpretation of Fed. R. Crim. P. 8(b) and 12(b)(2). In addition to the cases cited in my dissent, the decision of the majority also conflicts with those of the Fifth and Seventh Circuits in *United States v. Wilson*, 657 F.2d 755, 764 (5th Cir. 1981), *cert. denied*, ── U.S. ──, 102 S.Ct. 1456 (1982), and *United States v. Hedman*, 630 F.2d 1184, 1199 (7th Cir. 1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981).

In the *Hatcher* case (No. 80–5094), in addition to the matters discussed in my dissent, rehearing should be granted to consider whether the cocaine, even if not legally seized, could have been admitted to rebut Hatcher's entrapment claim.