UNITED STATES of America,
Plaintiff-Appellee,

v.

Rosemary JOHNSON,
Defendant-Appellant.

No. 83–1681.

United States Court of Appeals,
Sixth Circuit.

Argued April 11, 1985.

Decided May 29, 1985.

Norman K. Kravitz (argued), Grand Rapids, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Michael J. Lavoie (argued), Detroit, Mich., for plaintiff-appellee.

Before MERRITT and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

## I.

Rosemary Johnson appeals from her jury conviction for mail fraud. Rosemary Johnson, her husband Robert Johnson, Joshua Joseph, his brother Jacob Joseph, and Samuel Hancock were named in a five count indictment[1] for conspiracy to transport sto-

---

1. The indictment charged the following offenses:

*Count 1:*
Offense: Conspiracy to transport in interstate commerce stolen motor vehicles;
Defendants: Samuel Hancock, Robert Johnson, Joshua Joseph, Jacob Joseph;

*Count 2:*
Offense: Transportation of stolen motor vehicle (1982 Mercedes), aiding and abetting;
Defendants: Samuel Hancock, Robert Johnson, Joshua Joseph;

*Count 3:*

len motor vehicles in interstate commerce, transportation of stolen motor vehicles, and mail fraud. Defendant Samuel Hancock pleaded guilty. The other four defendants pleaded not guilty and were tried by a jury before Judge Guy. All four defendants were convicted on all counts; they appealed their convictions. After hearing oral arguments, this court affirmed the Joseph brothers' convictions (No. 83–1660) and Robert Johnson's conviction (No. 83–1671) pursuant to 6th Cir.R. 19. 762 F.2d 1012 (1985). In this opinion, we consider only whether Rosemary Johnson's conviction should be set aside because, as she contends, there was impermissible joinder of the mail fraud count with the other counts against the other defendants. We conclude that the joinder was not improper under either Fed.R.Crim.P. 8(b) or Fed.R.Crim.P. 14 and uphold Rosemary Johnson's conviction.

## II.

The charges against the defendants arose out of the undercover FBI investigation of a large scale commercial automobile theft ring in Detroit. Federal undercover agent Joseph Finnigan adopted the identity of "Joe Booker," a corrupt employee of the Michigan Secretary of State. In his role as Joe Booker, Finnigan sold packages of false automobile titles, registrations and license plates for use on stolen vehicles to Samuel Hancock. Hancock would pass these false papers to persons who presumably had possession of the stolen vehicles. The stolen vehicles would then be transported to Louisiana where the fraudulent Michigan paperwork would be used to obtain Louisiana titles for the stolen vehicles.

Agent Finnigan sold false title/registration papers to Hancock: (1) in the name of Evavattac Greene, a niece of both of the Josephs, for the 1982 Cadillac described in

Count 3 of the indictment; the papers showed a false Detroit address for Ms. Greene; (2) in the name of Joshua Joseph for the 1982 Mercedes described in Count 2 of the indictment; the papers showed a false Detroit address for Joshua Joseph; (3) in the name of Jacob Joseph for the 1982 International truck-tractor described in Count 4 of the indictment; the papers showed a false Detroit address for Jacob Joseph; and (4) in the name of Rosemary Johnson for the 1980 Cadillac that was the subject of a mail fraud scheme described in Count 5. Within weeks of Finnigan's selling the false registration papers to Hancock, all of these vehicles (except the 1980 Cadillac described in Count 5), were retitled in Louisiana via use of the false papers. The 1982 Cadillac was retitled by Evavattac Greene. The 1982 Mercedes was retitled by Joshua Joseph. The 1982 International truck-tractor was retitled by Jacob Joseph.

During the course of his meetings with Hancock, Agent Finnigan learned that Robert Johnson, a Detroit police officer, was arranging the sale and delivery of the stolen automobiles to individuals in Louisiana. Finnigan tape recorded several conversations with Robert Johnson in which Robert Johnson admitted helping transport the stolen vehicles to Louisiana and participating in the mail fraud scheme. Additionally, Robert Johnson's father's telephone records revealed numerous telephone calls between the father's residence and the Louisiana grocery store owned by Joshua Joseph.

The bogus title for the 1980 Cadillac, which was issued to Rosemary Johnson, wife of Robert Johnson, was used by Rosemary Johnson in support of an automobile theft insurance claim. Rosemary Johnson received a 1980 Cadillac from Hancock in March of 1982. On April 16, 1982, Rose-

Offense: Transportation of stolen motor vehicle (1982 Cadillac), aiding and abetting;
Defendants: Samuel Hancock, Robert Johnson;
*Count 4:*
Offense: Transportation of stolen motor vehicle (1982 International truck-tractor), aiding and abetting;

Defendants: Samuel Hancock, Robert Johnson, Jacob Joseph;
*Count 5:*
Offense: Mail fraud;
Defendants: Robert Johnson, Rosemary Johnson.

mary Johnson obtained AAA automobile insurance on the car. Agent Finnigan testified that on August 3, 1982, he sold Hancock the first fraudulent title in Rosemary Johnson's name. Rosemary Johnson, who was employed by the Detroit Police Department for four months in 1977 and who received several months of training at the police academy that included, *inter alia,* training in the detection of stolen vehicles and false titles, noticed that the first false title papers contained erroneous information regarding the weight of the 1980 Cadillac and returned the title to Hancock for correction. Agent Finnigan further testified that on August 9, 1982, he sold Hancock a second bogus title, which bore the correct weight of the automobile and an issue date of March 15, 1982, in Rosemary Johnson's name for the 1980 Cadillac. On or about August 9, 1982, Rosemary Johnson received through Hancock a corrected fraudulent title issued by Agent Finnigan. On August 11, 1982, only a few days after receiving the second fraudulent title, Rosemary Johnson reported the car stolen to the Ferndale, Michigan, Police Department. The following day she filed an insurance claim with AAA. It was this claim that led to Robert and Rosemary Johnson's indictment for mail fraud. The AAA's investigation of the claim determined that the vehicle title submitted by Rosemary Johnson was invalid, and the claim was not paid.

### III.

### A.

On appeal, Rosemary Johnson contends that the district court erred in refusing to grant her Fed.R.Crim.P. 8(b)[2] motion to sever and try Count 5 separately from Counts 1–4. Under Rule 8(b) multiple defendants may be joined only if a sufficient

nexus exists between the defendants and the single or multiple acts or transactions charged as offenses. *See* 1 C. Wright, Federal Practice & Procedure § 144. In *United States v. Hatcher,* 680 F.2d 438 (6th Cir.1982), a leading Sixth Circuit case on joinder of multiple defendants, this court articulated the standard for joinder under Rule 8(b) as follows:

> The joinder of multiple defendants is proper under Rule 8(b) only if each of the counts of the indictment arises out of the same act or transaction or series of acts or transactions, even if all counts of the indictment include a common defendant.[3]

*Id.* at 441 (citations omitted).

The initial question that must be addressed is what constitutes one "series" of acts or transactions for purposes of Rule 8(b). The principal source of guidance on this issue in the Sixth Circuit is *Hatcher.* In that case, the court found that the requisite "series" of transactions was not present. In *Hatcher,* defendants Hatcher and Manetas were jointly indicted and jointly tried for federal narcotics crimes. Both Hatcher and Manetas were charged with three counts relating to possession and distribution of heroin; Hatcher alone was charged with three counts relating to possession and distribution of cocaine. The *Hatcher* court held the fact that all counts against both defendants were based on possession and distribution of narcotics was not sufficient to justify joinder, even though the evidence showed that Manetas was Hatcher's source of heroin. This court held that the trial judge committed reversible error by not granting Manetas' motion for Rule 8(b) severance because "the indictment on its face alleges no connection between Manetas and the cocaine related charges against Hatcher. Neither does the

---

**2.** Fed.R.Crim.P. 8(b) provides:

(b) Joinder of defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of

the defendants need not be charged in each count.

**3.** This court also held in *Hatcher* that a violation of Rule 8(b) is reversible error unless shown to be harmless and that a Rule 8(b) violation is harmless only if "no possible harm from the misjoinder could reasonably have occurred." *Id.* at 442.

record reveal any evidence of such connection." *Id.* at 441.

We find that the instant case is distinguishable from *Hatcher.* Despite Rosemary Johnson's protestations that her only connection with the "series" of transactions involving the other defendants is via her marriage to Robert Johnson,[4] the record reveals numerous connections between Hancock, the kingpin in the fraudulent title and stolen car operation, and the mail fraud charges against Rosemary Johnson.

Mrs. Johnson concedes that she knew Hancock personally, and had known him for eight years prior to her marriage to Robert Johnson. In addition, she testified that Hancock offered to sell her the 1980 Cadillac in March of 1982, before her marriage to Robert Johnson. She stated that she knew Hancock often sold used cars, but she denied knowing that Hancock had previous car theft convictions. Mrs. Johnson also testified that a man she knew to be one of Hancock's associates, brought her the "title" several months after she made a $600 down payment to Hancock and took possession of the automobile. After Mrs. Johnson received her first "title" and discovered the discrepancy between the weight of the 1980 Cadillac that appeared on the "title" and the actual weight of the car, she returned the "title" to Hancock for him to correct. Agent Finnigan supplied the corrected "title" to Hancock, and Hancock's associate delivered the corrected "title" to Mrs. Johnson on or about August 9, 1982. She reported that her car was stolen[5] on August 11, 1982, only a few days after receiving the second "title" from Hancock's associate. If the insurance company had not discovered the defect in Rosemary Johnson's "title," she would have recovered approximately $13,000 in insurance proceeds.

Other circuits have held that a group of acts or transactions constitutes a "series" if they are logically interrelated. *See United States v. Corbin,* 734 F.2d 643, 649 (11th Cir.1984); *United States v. Cavale,* 688 F.2d 1098, 1106 (7th Cir.), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 380, 74 L.Ed.2d 513 (1982); *United States v. Ford,* 632 F.2d 1354, 1371–72 (9th Cir.1980). A group of acts or transactions is logically interrelated, for instance, if the acts or transactions are part of a common scheme or plan. *See Cavale,* 688 F.2d at 1106; *Ford,* 632 F.2d at 1372. We find that in the instant case, the mail fraud was logically interrelated with the other acts charged in the indictment. Fraudulent titles supplied by Agent Finnigan to Hancock made each crime possible. Like the Josephs and Robert Johnson, Rosemary Johnson received an automobile title, which a jury could infer that she knew was fraudulent, from Hancock. Like the Josephs and Robert Johnson, Rosemary Johnson used the bogus title in an attempt to legitimize a criminal act. The Josephs received the fraudulent titles and attempted to use them to legitimize stolen cars, while Rosemary Johnson received a bogus title from the same source and attempted to use it to legitimize a fraudulent insurance claim. Rule 8(b) should be construed to favor joinder in order to promote judicial economy. *Hatcher,* 680 F.2d at 440; *United States v. Franks,* 511 F.2d 25, 28–29 (6th Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975). We hold that under Rule 8(b), Rosemary Johnson was properly joined with the other defendants.

### B.

Defendant Rosemary Johnson contends that even if joinder was not improper under Rule 8(b), joinder was nevertheless improper under Fed.R.Crim.P. 14.[6] Denial

---

**4.** Rosemary Johnson married Robert Johnson on March 31, 1982.

**5.** In a taped conversation with Agent Finnigan, Robert Johnson admitted that he sold the 1980 Cadillac's engine and cut up the rest of the automobile with a blow torch.

**6.** Under Fed.R.Crim.P. 14, the trial court may order severance "if it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants in an indictment."

of a motion for Rule 14 severance will not be disturbed on review unless the district court abused its discretion in denying the motion. *United States v. Gallo*, 763 F.2d 1504, 1524 (6th Cir.1985); *United States v. Williams*, 711 F.2d 748, 750 (6th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 433, 78 L.Ed.2d 365 (1983); *United States v. Kendricks*, 623 F.2d 1165, 1168 (6th Cir.1980). In *Gallo*, 763 F.2d 1504 (6th Cir.1985), this court articulated the standards that a defendant must meet in order to establish that the district court abused its discretion in denying a Rule 14 motion as follows:

> To show an abuse of discretion in this respect [denial of Rule 14 severance], a defendant must make a strong showing of prejudice. Specifically, he must show an inability by the jury to separate and to treat distinctively evidence that is relevant to each particular defendant on trial. Even if defendant may establish some potential jury confusion, this must be balanced against society's need for speedy and efficient trials. Persons jointly indicated normally should be tried together as a general principle.

at 1525 (citations omitted).

Rosemary Johnson contends that much of the evidence admitted at trial was relevant only to the charged conspiracy and interstate transportation offenses for which she was not charged. She maintains that the admission of the evidence relating to the other defendants had a "spillover effect" and unduly prejudiced her. She also contends that being tried jointly with her husband, principal defendant Robert Johnson, unduly prejudiced her. As this court recently stated in *United States v. Gallo*, 763 F.2d 1504 (6th Cir.1985):

> Joinder of cases is permitted when it would promote judicial economy without substantial prejudice to the defendants. A defendant has no right to a separate trial merely because his likelihood of acquittal would be greater if severance were granted. Absent a showing of substantial prejudice, spillover of evidence from one case to another does not require severance.

at 1526 (citations omitted).

It should be noted that Rosemary Johnson does not contend on appeal that evidence was, over her objections, erroneously admitted as to her. Her contention is that evidence admitted as to others was harmful as to her and therefore, she argues, shows that her Rule 14 motion should have been granted. With respect to that part of the evidence that was admitted only on the basis of the conspiracy charged in Count 1 (and the government does not claim that Rosemary Johnson was a part of that conspiracy), it appears to us that such evidence was harmless as to Rosemary Johnson. Other parts of the evidence, *e.g.*, that establishing the relation between Finnigan-Hancock, Finnigan-Robert Johnson, and Hancock-Robert Johnson, was admissible as to Rosemary Johnson on the basis of the uncharged conspiracy to commit the mail fraud. Since this latter evidence was properly admissible as to Rosemary Johnson, she cannot successfully rely thereon in support of her claim that her Rule 14 motion should have been granted.

We find that Rosemary Johnson has not made "a clear showing of specific and compelling prejudice" resulting from her joint trial with the other defendants, *Id.* at ——; *see also United States v. Dempsey*, 733 F.2d 392, 398 (6th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 389, 83 L.Ed.2d 323 (1984). The district court's denial of her Rule 14 motion for severance will not serve as a basis for reversal.

The decision of the district court is AFFIRMED.