NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0135n.06

Nos. 24-6016 / 25-5284

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Mar 13, 2026

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| DAYTON PETERSON (24-6016); JOHN E. LOHDEN, JR. (25-5284), | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendants-Appellants. | ) | OPINION |
| | ) | |

Before: GILMAN, KETHLEDGE, and HERMANDORFER, Circuit Judges.

KETHLEDGE, Circuit Judge. A jury convicted Dayton Peterson and John Lohden, Jr., of kidnapping, robbery, and impersonating an officer, among other crimes. The district court sentenced Peterson to 30 years in prison and Lohden to 39 years. On appeal, they challenge their convictions and sentences on myriad grounds. We reject their arguments and affirm.

I.

For about six years, John Lohden, Jr., worked as a confidential informant for the Bullitt County Sheriff's Office. During that time, he also worked occasionally with the Louisville Police Department and the Federal Bureau of Investigation. Through his work, Lohden learned who in his area sold drugs—and he assembled a modest arsenal of guns and law-enforcement gear.

In July 2021, Lohden kidnapped Anthony Bishop, a suspect he was helping to investigate. Lohden, his brother, and a friend drove to Bishop's apartment dressed as United States Marshals. When they arrived, they put Bishop in handcuffs and led him to a black SUV, where they

blindfolded him. They then drove Bishop to a parking garage, where they forced him to call his friends and family for ransom. Lohden and his partners released Bishop only after he had given them between $75,000 and $80,000.

Over the next year, Lohden continued to work with law enforcement. In January 2022, he offered to arrange a controlled buy to help police recover a set of stolen firearms. Lohden took money from law enforcement and brought back three rifles and a shotgun. But the guns had been his all along. Lohden split the money with his friend, who had played the seller.

In August 2022, Lohden kidnapped Jose Manuel Avila-Galaviz. This time, Lohden brought along Dayton Peterson and two other friends. Lohden and Peterson entered Avila's house—armed and wearing body armor—and told Avila and his family that they had a search warrant. Lohden and Peterson scoured the house and collected (among other things) at least 17 firearms, 33 Rolex watches, 80 pounds of cocaine and heroin, and $70,000 cash. They then told Avila that they were taking him to the "federal building," and they drove him away in his own car. In the parking lot of a nearby store, Lohden and Peterson demanded that Avila tell them about other drug-dealers in the area. After they drove Avila home, they drove away again in his car— this time without Avila—to take the car "to impound."

Two days later, local police tried to arrest Lohden on outstanding warrants. Law enforcement surrounded the car Lohden was driving; but he rammed his vehicle into several others, drove off, and hit yet more vehicles, including a school bus. Eventually, Lohden exited the car and fled on foot, with his minor son in tow. Law enforcement soon found the pair hiding in a bush nearby.

On Lohden's person, officers found watches and cash; in the car, they found cocaine, heroin, cash, law-enforcement gear, a search warrant with Avila's wife's name on it, two rifles,

and a grenade. Lohden said he had procured the firearms and jewelry from "someone named D," and he directed police to a storage unit where Avila's car was parked. The storage unit had been rented by Dayton Peterson.

Meanwhile, shortly after Avila's kidnapping, Peterson paid $27,000 in cash for a trailer, which law enforcement started to surveil. On one occasion, police saw Peterson loading a pink backpack into a white truck parked outside the trailer. In October 2022, police executed a search warrant at the trailer, and they found watches, marijuana, drug paraphernalia, pistols, ammunition, more than $12,000 cash, and three cellphones. They arrested Peterson the same day. When police searched the white truck two months later (with a new search warrant), they found a pink backpack that contained cocaine, heroin, and digital scales.

Four months later, an FBI agent asked Lohden's attorney whether he wanted to claim the car Lohden had wrecked on the day of his arrest. Lohden's attorney replied, "No, we don't want it." The agent arranged for the car to be towed, and when he searched the car for the keys (at the tow-truck driver's request), he found a foil-wrapped cellphone. The agent obtained a search warrant for the phone, where he found messages between Lohden and Peterson about another planned kidnapping.

For the Bishop incident (the first kidnapping), Lohden was charged with kidnapping and impersonating an officer. *See* 18 U.S.C. §§ 913, 1201(a)(1). For the fraudulent controlled buy, Lohden was charged with possessing a firearm as a felon and possessing an unregistered firearm. *See id*. § 922(g)(1); 26 U.S.C. § 5861(d). For the Avila incident, both Lohden and Peterson were charged with kidnapping, impersonating an officer, robbery, brandishing a firearm during a violent crime, and conspiracy to possess with intent to distribute controlled substances. *See* 18 U.S.C. §§ 913, 924(c)(1)(A), 1201(a)(1), 1951(a); 21 U.S.C. §§ 841(a)(1), 846. Lohden was individually

charged with possessing with intent to distribute controlled substances, possessing a firearm during a drug-trafficking crime, and possessing an unregistered firearm. *See* 18 U.S.C. § 924(c)(1)(A); 21 U.S.C. § 841(a)(1); 26 U.S.C. § 5861(d). For his conduct after the Avila incident, Peterson was separately charged with possessing with intent to distribute controlled substances, possessing a firearm during a drug-trafficking crime, and money laundering. *See* 18 U.S.C. §§ 924(c)(1)(A), 1957; 21 U.S.C. § 841(a)(1).

Prosecutors offered Lohden and Peterson a plea deal, albeit one they could accept only if both pled guilty. Lohden tried to accept, but Peterson refused. A joint trial followed, after which the jury found both defendants guilty of all charges. The trial court sentenced Lohden to 468 months in prison and Peterson to 360 months. These appeals followed.

## II.

## A.

We begin with the sole argument both defendants share: that the district court improperly admitted in evidence text messages from the cellphone that police found in Lohden's impounded car. The defendants argue that this evidence exceeded the scope of the government's pre-trial notice, and that the evidence was otherwise inadmissible.

Under Federal Rule of Evidence 404(b)(3), the government must provide "reasonable notice" of its intent to introduce evidence of other crimes, wrongs, or acts that the defendant has committed. Fed. R. Evid. 404(b)(3)(A). The government must provide this notice before trial, unless the district court, for good cause, excuses lack of notice. *Id.* 404(b)(3)(C). Here, more than two weeks before trial, the government provided notice that it intended to introduce "text messages" from Lohden's phone, to show that the defendants had "placed tracking devices on the vehicles of their intended targets, conducted surveillance, and did extensive research on their

targets." During trial, the government alerted defense counsel that it intended specifically to introduce messages in which Lohden and Peterson discussed another planned robbery. The district court, over the defendants' objection, admitted the messages. We review the court's decision to admit this evidence for an abuse of discretion. *United States v. Johnson*, 79 F.4th 684, 698 (6th Cir. 2023).

The court reasoned that, because the defendants had in their opening statements disavowed any knowing participation in the charged kidnappings, the messages could be admitted to show otherwise—regardless of pretrial notice. We view the court's reasoning as a determination that good cause permitted the court to excuse any lack of pretrial notice. *See* Fed. R. Evid. 404(b)(3)(C). And we see no basis to disturb that determination here. The court cited *United States v. France*, 611 F. App'x 847, 850 (6th Cir. 2015) (unpublished), for the proposition that "where the defendant's opening statement proclaims he 'got hoodwinked, taken advantage of, used, abused, and then kicked to the curb,'" "evidence showing the contrary—i.e., that he knew what he was doing—has obvious relevance." By the same logic, the court here did not abuse its discretion in finding that Lohden's and Peterson's opening statements opened the door to evidence that they had together planned another robbery—even absent pretrial notice. *See United States v. Harvey*, 653 F.3d 388, 394 (6th Cir. 2011) ("Generally, evidence which is otherwise suppressed or excluded becomes admissible when the defendant opens the door to the issue.") (citation omitted).

The defendants also argue that, irrespective of notice, the messages were not admissible for any permitted use under Rule 404(b)(2). We review de novo whether they were. *United States v. Fairley*, 137 F.4th 503, 517 (6th Cir. 2025).

The district court held that the messages were admissible to show Peterson's knowledge and intent—specifically, to rebut his assertions that he was "naïve" as to Lohden's plan and thought Lohden was "all talk." Similarly, the court held that the messages rebutted "Lohden's assertions regarding mistake in his position, mistake in his authority" as a confidential informant. The record here supports the court's conclusions. Among other things, the messages featured Lohden telling Peterson about a "millionaire" with a "huge safe in [his] basement all stocked to the top with cash." Lohden proposed that the two "pull up" to the man's house and "search with papers," putatively for "money laundering." Peterson liked this idea; he replied, "Shit I'm wit it." These messages showed that each of the defendants had planned and knew how to commit kidnappings like the charged ones.

The defendants also argue that the messages were unfairly prejudicial. *See* Fed. R. Evid. 403. We review for an abuse of discretion the court's determination that they were not. *Fairley*, 137 F.4th at 517. The court expressly declined to admit any evidence about whether the planned robbery in fact occurred, which the court thought could be "unfairly prejudicial." Thus, as soon as the jury heard the last message, the court called counsel to the bench and told them to "move on." We see no abuse of discretion.

### B.

We now turn to three challenges that Lohden alone makes.

### 1.

Lohden argues that the district court should have granted his motion to suppress evidence of the cellphone, which he says police obtained in violation of the Fourth Amendment. We review the court's factual findings for clear error and its legal conclusions de novo, viewing the evidence

in the light most favorable to the court's decision. *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019).

As a threshold matter, Lohden must show that he had a "legitimate expectation of privacy" in the impounded vehicle where his cellphone was found. *United States v. Rogers*, 97 F.4th 1038, 1041 (6th Cir. 2024) (citation omitted). Lohden cannot establish that, however, because he abandoned the vehicle before police arrested him. *See United States v. Oswald*, 783 F.2d 663, 669 (6th Cir. 1986). Lohden left the badly damaged car on the side of the road after a high-speed chase; police arrested him elsewhere. The car was then impounded and sat in the FBI lot for six months. The FBI agent did not touch the car again until after Lohden's attorney told him, "No, we don't want it." Lohden therefore demonstrated the opposite of a subjective expectation of privacy in the vehicle. *See United States v. Robinson*, 390 F.3d 853, 873–74 (6th Cir. 2004). So this argument fails.

2.

Lohden next argues that the district court incorrectly determined that he was competent to be sentenced. Where, as here, the court expressly finds the defendant to be competent, we review for clear error. *United States v. Dubrule*, 822 F.3d 866, 875 (6th Cir. 2016).

Four months after the jury found Lohden guilty, his counsel asked the court to order a psychiatric evaluation. The court granted the motion, and a Federal Bureau of Prisons psychiatrist evaluated Lohden. The psychiatrist concluded that Lohden was competent, and that he was faking any symptoms to the contrary. At a competency hearing, the court heard testimony from both the Bureau psychiatrist and a psychiatrist retained by Lohden. We see nothing clearly erroneous in the court's ultimate decision to credit the Bureau psychiatrist's testimony—especially given that,

over three years of court proceedings, the court itself had seen no sign that Lohden was incompetent.

Nor do we see any merit in Lohden's alternative argument that the court incorrectly analyzed his competency under 18 U.S.C. § 4241 (as his attorneys had requested), rather than under 18 U.S.C. § 4244. The question before the court was whether Lohden was competent to be sentenced—not whether he should be hospitalized instead of imprisoned. *Compare* 18 US.C. § 4241(a), (d)(1), *with* 18 U.S.C. § 4244(a), (d). Thus, the court assessed Lohden's competency under the correct statute and did not clearly err in making that assessment.

### 3.

Finally, Lohden argues that the government violated his due-process rights by denying him a plea deal only because Peterson did not also plead guilty. We review this legal question de novo. *See United States v. Allen*, 954 F.2d 1160, 1165 (6th Cir. 1992).

The government made a "contingent offer" to Lohden and Peterson: both could get a plea deal, but only if both pled guilty. Lohden agreed to plead, but Peterson did not—so the government withdrew the offer, and both defendants went to trial. Lohden argues that he was thus "forced to trial against his will." Lohden Appellant Br. 36.

Yet Lohden was never prevented from pleading guilty; he was prevented only from securing the 25-year plea deal the government had conditionally offered him for doing so. There is no constitutional right to a plea bargain. *Missouri v. Frye*, 566 U.S. 134, 148–49 (2012). Lohden thus had no right to a 25-year sentence. When the government offered him one, it was free to make the offer contingent on a guilty plea from Lohden's co-defendant. *See United States v. Usher*, 703 F.2d 956, 958 (6th Cir. 1983) ("The Supreme Court has expressly reserved judgment

on the constitutional implications of a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person other than the accused.").

## C.

Finally, we turn to the arguments that Peterson alone makes.

## 1.

Peterson argues that the district court improperly joined his trial with Lohden's, given that Lohden was charged with crimes related to a kidnapping with which Peterson was not involved. Yet Peterson never objected to being tried alongside Lohden, so we review the joinder only for plain error. *See United States v. Dedman*, 527 F.3d 577, 591 (6th Cir. 2008).

"Persons jointly indicted normally should be tried together." *United States v. Johnson*, 763 F.2d 773, 777 (6th Cir. 1985) (citation modified); *see also United States v. Tisdale*, 980 F.3d 1089, 1094 (6th Cir. 2020) ("Joint trials are favored."). And both "defendants need not be charged in each count." Fed. R. Crim. P. 8(b).

Here, the Bishop and Avila kidnappings were similar in kind, both having been led by Lohden in his capacity as a fake police officer. Thus, they were "logically interrelated," which is all our precedents require for joinder under Rule 8(b). *Johnson*, 763 F.2d at 776; *see also United States v. Ross*, 703 F.3d 856, 884–85 (6th Cir. 2012). So we reject this argument.

## 2.

Peterson next argues that the evidence was insufficient on nearly every count on which the jury found him guilty. We view the evidence in the light most favorable to the government, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Jones*, 641 F.3d 706, 710 (6th Cir. 2011).

Start with the convictions for kidnapping, impersonating an officer, and robbery. Peterson says we must vacate them because the government's key witness was subject to impeachment and because, Peterson feels, the physical evidence presented was not good enough. Yet we "may not rule on a challenge to witness credibility in reviewing the denial of a motion for acquittal because doing so would invade the province of the jury as the sole finder of fact in a jury trial." *United States v. Graham*, 622 F.3d 445, 449 (6th Cir. 2010) (internal quotation marks omitted). And "physical evidence is not a prerequisite to sustaining a conviction." *Id.* at 448. Here, though, there was physical evidence (Peterson's fingerprint on a clipboard found in the storage unit)—along with witness testimony that Peterson actively participated in the kidnapping and robbery, while wearing police gear, and text messages forecasting the same. Peterson's attack on these convictions thus fails.

The result is the same for Peterson's convictions for drug possession, firearm possession, and money laundering. The backpack that police found in the truck outside Peterson's trailer was full of drugs—and surveillance footage showed that Peterson himself had put the backpack there. The same footage showed that Peterson was often armed when he stepped outside his trailer. And trial testimony revealed that Peterson had paid $27,000 in cash for the trailer—merely three days after Avila's kidnapping. A jury could have found that Peterson behaved exactly as charged.

The evidence likewise would allow a rational jury to find that Peterson had agreed to distribute drugs. Lohden and Peterson stole 80 pounds of cocaine and heroin, and texted in advance that the haul would "get [them] up pretty good." A jury could have inferred that Lohden and Peterson would sell the drugs rather than consume them all.

3.

Finally, Peterson argues that his 360-month sentence is substantively unreasonable. We presume the contrary, given that the sentence was below his guidelines range. *See United States v. Smith-Kilpatrick*, 942 F.3d 734, 746 (6th Cir. 2019).

Peterson contends that the district court "failed to adequately take into account his youth, disadvantaged childhood, status as a first-time prisoner, and the low risk of recidivism because of his youth." Peterson Appellant Br. 54. During Peterson's sentencing hearing, however, the court expressly considered Peterson's "exceptionally difficult childhood," his age at the time of the offenses, and his criminal history. We will not reweigh those circumstances ourselves. *See United States v. Pyles*, 904 F.3d 422, 426 (6th Cir. 2018).

\* \* \*

The district court's judgments are affirmed.